**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

**PLANNED PARENTHOOD ARKANSAS &**     **PLAINTIFFS**
**EASTERN OKLAHOMA d/b/a PLANNED**
**PARENTHOOD GREAT PLAINS, on behalf**
**of itself and its patients, and LITTLE ROCK**
**FAMILY PLANNING SERVICES, on behalf**
**of itself and its patients**

v.        No. 4:17CV00401 JM

**NATHANIEL SMITH, in his capacity as**
**Director and State Health Officer, Arkansas**
**Department of Health**     **DEFENDANT**

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff PPGP and Plaintiff LRFP operate the three licensed abortion facilities in Arkansas, two of which are located in Little Rock and one of which is located in Fayetteville. Decl. of Laura McQuade in Supp. of Mot. for Summ. J. ¶ 2 ("McQuade Decl."); Decl. of Lori Williams in Supp. of Mot. for Summ. J. ¶ 3 ("Williams Decl.").

   **Response:** Undisputed.

2. PPGP, or its predecessor organizations, have been licensed by Defendant Arkansas Department of Health to provide medication abortion at PPGP's health centers in Little Rock and Fayetteville for the past seven years. McQuade Decl. ¶ 2.

   **Response:** Undisputed.

3. LRFP has operated a health center in Little Rock since 1973, and currently provides both medication abortion and surgical abortion at its licensed facility. Williams Decl. ¶ 3.

   **Response:** Undisputed.

4. Prior to enactment of section 2 of Arkansas Act 383, Reg. Sess. (2017) ("Act 383" or "the Act"), to be codified at Ark. Code Ann. § 20-9-302 *et seq.*, Defendant Arkansas Department of Health ("ADH" or "Department") had the authority to perform "periodic" inspections of licensed abortion facilities to ensure compliance with applicable laws and regulations. *See* Ark. Code Ann. § 20-9-302 (2) ("The facilities, equipment, procedures, techniques, and conditions of those clinics or similar facilities shall be subject to periodic inspection by the department.").

**Response:** Undisputed, except that the quoted section of the Arkansas Code is Ark. Code Ann. § 20-9-302(a)(2).

5. These inspections have been unannounced, and have occurred at least annually, and sometimes more frequently. *See* Ark. Admin. Code § 007.05.2-4(J) ("Any authorized representative of the Arkansas Department of Health shall have the right to enter upon or into the premises of any Abortion Facility at any time in order to make whatever inspection it deems necessary in order to assure minimum standards and regulations are met."). McQuade Decl. ¶ 3; Williams Decl. ¶ 5.

**Response:** Partly disputed. Based on Department records, Planned Parenthood – Fayetteville was surveyed on the following dates: 2/12/2013, 10/3/2014, 10/19/2015, and 10/27/2016. Planned Parenthood – Little Rock was surveyed on 10/29/2012, 7/25/2014, 9/24/2015/ and 10/19/2016. And Little Rock Family Planning Services was surveyed on 3/2/2012, 5/9/2013, 4/25/2014, 4/1/2015, 5/12/2016, and 7/29/2016. In addition, Little Rock Family Planning Services was inspected in response to specific complaints on 3/2/2012, 6/1/2012, 2/11/2013, 6/7/2013, 4/7/2015, 9/15/2015, 4/14/2016, 7/26/2016.

6. Under existing regulations, Defendant can enter any licensed abortion facility in Arkansas, at any time, to conduct an inspection. Ark. Admin. Code § 007.05.2-4(J).

**Response:** Undisputed.

7. In the past, following an inspection of an abortion facility, the Defendant has issued a "Statement of Deficiencies" for any purported violation of law or regulation, and then has permitted the facility to "correct" the violation by submitting a "Plan of Correction." McQuade Decl. ¶ 4; Williams Decl ¶ 6.

**Response:** Undisputed to the extent that in the past the Department has issued statements of deficiencies to the Plaintiff-abortion clinics for violations of minimum standards and that the clinics have submitted plans of correction in response. Otherwise disputed.

8. Since 2012, PPGP's two locations have been inspected by Defendant at least twelve times. After nine of these inspections, Defendant notified PPGP of its determination that PPGP had failed to comply with some law or regulation. McQuade Decl. ¶ 4.

**Response:** Disputed. Based on Department records, Planned Parenthood – Fayetteville and Planned Parenthood – Little Rock have been surveyed a total of eight times during the years including 2012 to the present. See Response to Paragraph 5 above.

9. Deficiencies noted during PPGP's inspections over the past five years include the alleged failure to document that the emergency contact list is updated every six months; failure to have evidence of updated CPR-certification and updated TB skin testing for certain staff; failure to label the dates that disinfection monitoring supplies were opened or prepared; and failure to remedy a torn cover on a piece of furniture. Ex. 1; McQuade Decl. ¶ 5.

**Response:** Disputed as mischaracterization. The noted deficiencies are not "minor." In October of 2016, a PPGP employee verified that the emergency contact list had not been updated

since 2014. Two separate inspections found that at least half of PPGP's clinical staff lacked CPR certification. Five of six employees lacked current TB skin testing, in violation of standard CDC precautions. Two examination tables had damaged vinyl coverings, which prevented adequate disinfection. Other documented violations include, for example: failure to dispose of outdated supplies and medications, failure to properly store patient care items, and failure to establish a medication administration or infection control policy. Ex. 1.

In addition, the Plaintiffs failed to include among their exhibits deficiencies that are even more serious. See Def. Exh. 5; Def. Exh. 8; Def. Exh. 9. Inspectors cited multiple serious violations regarding medication inventory and administration, which negatively impacted any patient who was prescribed a medication. For example, one Plaintiff-abortion facility administered an expired DEA-controlled sedative to over 180 patients without realizing that it was expired. Def. Exh. 5. The facility improperly stored syringes and intravenous tubing under a sink and left an oxygen mask on the floor. Def. Exh. 5.

Other inspections that the Plaintiffs failed to include among their exhibits show that one clinic failed to document whether "all medications were prescribed by the physician." Def. Exh. 8. This violation left the abortion clinic with no record of who was responsible for dispensing drugs, including doubling doses of abortion drugs and corticosteroids, tripling multiple patients' Fentanyl dosages, and ordering administration of Narcan and Romazicon. *Id.* Failing to verify that a physician prescribed medication "had the potential for all patients admitted to the facility to receive the wrong dose or the wrong medication." *Id.* This same abortion clinic grossly disregarded needs of multiple patients once the women received abortions. On at least two occasions, the facility "failed to assure . . . patients were discharged accompanied by a responsible adult," despite the fact that the patients had undergone sedation and could not be

trusted to maintain their own safety. Def. Exh. 9. Inspections revealed more than a dozen other failures to authenticate information or correct errors in patients' medical records—including multiple instances of physicians failing to sign for an abortion procedure—which left the clinic with potentially incomplete and inaccurate medical records on its patients. Def. Exh. 8. One abortion clinic physician conducted an emergency examination of a patient experiencing severe pain, but failed to record any assessment notes regarding that pain. Def. Exh. 9.

10. From 2012 to the present, LRFP's abortion facility has been inspected by the Defendant at least thirteen times. After eight of these inspections, Defendant notified LRFP of its determination that LRFP had failed to comply with some law or regulation. Williams Decl. ¶ 6.

**Response:** Undisputed. See Response to Paragraph 5 above.

11. Deficiencies noted during LRFP's inspections during the past five years include the alleged need to make a minor alteration in documentation in patient charts; to remove cloth chairs in the clinic's patient recovery area; to remove a stain on ceiling tile; to remove dust on an ultrasound cart; and to test high level disinfection solution more frequently. Ex. 2; Williams Decl. ¶ 7.

**Response:** Disputed as mischaracterization. The noted deficiencies are not "minor." LRFP repeatedly failed to properly document a patient's transfer to the hospital by ambulance. Due to prior water leaks, three ceiling tiles in a procedure room exhibited water staining and one in the laundry room was out of place. Staff failure to monitor the efficacy of the high-level disinfectant solution was "likely to affect all patients treated at the facility." Other documented violations include, for example: failure to store items in compliance with CDC guidelines; failure to maintain an accurate controlled-substance count; and failure to properly inventory and dispose

of outdated medication, which resulted in 183 patients receiving an expired controlled drug. Ex. 2. See also Response to Paragraph 9 above.

12. Prior to enactment of the Act, Plaintiffs have been able to correct a Statement of Deficiencies through the submission of a "Plan of Correction." McQuade Decl. ¶ 6; Williams Decl. ¶ 8.

**Response:** Undisputed to the extent that in the past the Department has issued statements of deficiencies to the Plaintiff-abortion clinics for violations of minimum standards and that the clinics have submitted plans of correction in response. Otherwise disputed.

13. Prior to enactment of the Act, the Defendant had the discretionary authority to suspend or revoke an abortion clinic's license for the violation of any applicable law or regulation. *See* Ark. Admin. Code 007.05.2-8(G) ("The Department *may* deny, suspend, or revoke the license of any Abortion Facility on the following grounds: violation of any of the provisions of the Act or Rules and Regulations lawfully promulgated hereunder") (emphasis added).

**Response:** Undisputed insofar as Ark. Admin. Code 007.05.2-8(G) speaks for itself.

14. Defendant has never initiated licensure suspension or revocation proceedings against either Plaintiff. McQuade Decl. ¶ 7; Williams Decl. ¶ 9.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

15. Other health care facilities licensed by Defendant, including ambulatory surgical centers and birthing centers, are also subject to periodic inspections by Defendant. *See, e.g.* Ark. Code Ann. § 20-9-205 (permitting "such inspections and investigations" of ambulatory surgical centers that are necessary to effectuate the purposes of the licensing statutes); Ark. Admin. Code

007.05.12-4(I) ( "Any authorized representative of the Arkansas Department of Health shall have the right to enter upon or into the premises of any Free-Standing Birthing Center at any time in order to make whatever inspection it deems necessary in order to assure minimum standards and regulations are met.").

    16.    **Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

    17.    In addition, ambulatory surgical centers are inspected by Defendant for the purposes of conducting Medicare recertification surveys. *See* Ark. Admin. Code 016.06.3-200.100 (requiring ambulatory surgical centers participating in Medicaid to be "recertified" by the State Survey Agency); Arkansas Dep't of Health, Health Facility Services, http://www.healthy.arkansas.gov/programsServices/hsLicensingRegulation/HealthFacilityServices/Pages/default.aspx (last visited Jun. 28, 2017) ("Health Facility Services is the state licensing section of Arkansas Department of Health and the state survey agency for Centers for Medicare & Medicaid Services (CMS) for survey and certification and compliance for . . . . ambulatory surgery center[s]"); Exs. 3-5 (inspections of ambulatory surgical centers performed by Defendant for purposes of Medicare recertification).

    **Response:** Disputed as not material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

    18.    Following these inspections, these licensed health care facilities also routinely receive a "Statement of Deficiencies" for purported failure to comply with applicable rules or regulations. Exs. 3-5 (Statements of Deficiencies issued following inspections of health care facilities).

19.     **Response:** Disputed as nota fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

20.     For example, an ambulatory surgical center inspected by Defendant in 2015 received a Statement of Deficiencies for: failure to dispose of outdated and/or partially used single-dose vials of drugs and failure to label opened multi-dose vials of drugs with opening date; failure to include all required information in the patient rights document; failure to ensure table over bed in pre- and post- operative area was free of rust; improper storage of sterile packages using a rubber band; failure to remove dust from anesthesia cart; failure to ensure that covering of a chair was free of rips and tears; and failure to clean and disinfect the operating room between patients. Ex. 3.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

21.     Another ambulatory surgical center inspected by Defendant in 2016 received a Statement of Deficiencies for: failure to post "No Smoking" sign at entrance gate to medical gases storage and supply area; failure to perform required monthly load tests for emergency generators; failure to ensure that controlled substances were audited by licensed personnel at the beginning and end of each workday; failure to ensure that laryngoscope blades were stored to prevent contamination; failure to carry contaminated instruments in a leak proof, puncture resistant container from the operating room to the decontamination area; and failure to discard surgical masks after use. Ex. 4.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

22. A freestanding birthing center inspected by Defendant in 2016 received a Statement of Deficiencies for: failure to ensure the facility's Governing Body met quarterly and had written minutes of meetings signed by an officer; failure to ensure that facility's staff had current and unexpired nursing licenses; failure to ensure that emergency telephone numbers were reviewed and updated every six months; failure to ensure the inspection of patient care equipment every six months; failure to ensure that hot water supplied to laundry areas was a minimum of 110 degrees Fahrenheit; and failure to ensure that facility staff were trained in the use of fire extinguishers. Ex. 5.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

23. The Defendant has the discretionary authority to suspend or revoke the license of other licensed health care facilities in Arkansas based on violations of applicable laws or regulations. *See, e.g.* Ark. Code Ann. § 20-9-215(a) ("The State Board of Health is *empowered* to deny, suspend or revoke licenses [of ambulatory surgical centers] on any of the following grounds: (1) Violation of any of the provisions of this subchapter or the rules and regulations lawfully promulgated under this subchapter . . . ") (emphasis added); Ark. Admin. Code 007.05.12-4(D) (allowing free-standing birthing centers license to be renewed annually, "unless revoked," and setting forth no mandatory licensing penalties).

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

24. In the past five years, the Defendant has not revoked or suspended the license of any ambulatory surgery center or freestanding birth center in the entire state. Ex. 6.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment.

25. Defendant has recognized in versions of its Impact Statement on the Act that it "holds abortion facilities to a suspension standard unlike all other licensed facilities. No other health care facility licensed by HFS [Health Facility Services] receives a suspended license upon inspection with rule violation . . . . This bill requires suspension of the abortion facility license." Ex. 7.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment. Also disputed to the extent that the impact statement is not a legal or policy document, and it does not represent the Department's position on the legality of Act 383.

26. The same Impact Statement also identified the Act's bypassing of the Defendant's traditional, discretionary authority for determining whether to suspend a license as a weakness of the Act. Ex. 7.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment. Also disputed to the extent that the impact statement is not a legal or policy document, and it does not represent the Department's position on the legality of Act 383.

27. In addition, this Impact Statement expected a "significant increase in complaint allegations" from those seeking a facility's license suspension as a means of preventing abortions, and explicitly recognized that "[i]t has not been uncommon for [the Department of Health's] HFS [Section] to receive complaint allegations which are not substantiated upon investigation by HFS." Ex. 7.

**Response:** Disputed as not a fact material to Count I of Plaintiff's complaint or Plaintiff's motion for summary judgment. Disputed also to the extent that the impact statement is not a legal or policy document, and it does not represent the Department's position on the legality of Act 383.

Therefore, Defendant Nathaniel Smith, on behalf of the Arkansas Department of Health, respectfully requests that the Court deny the Plaintiffs' motion for summary judgment.

        Respectfully submitted,

        LESLIE RUTLEDGE
        Attorney General

By:    /s/ *Monty Vaughan Baugh*
        Monty Vaughan Baugh (Ark. Bar No. 2008138)
        Deputy Attorney General

        Jennifer L. Merritt (Ark. Bar No. 2002148)
        Senior Assistant Attorney General

        Michael A. Cantrell (Ark Bar No. 2012287)
        Assistant Attorney General

        Office of the Arkansas Attorney General
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Ph: (501) 682-2007
        Fax: (501) 682-2591

        Email:   Monty.Baugh@ArkansasAG.gov
                     Jennifer.Merritt@ArkansasAG.gov
                     Michael.Cantrell@ArkansasAG.gov

        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

    I, Monty V. Baugh, hereby certify that on July 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notice to all counsel of record.

                                    */s/ Monty V. Baugh*
                                    Monty V. Baugh